**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALICE SOTO,<br><br>                 Plaintiff,<br><br>       v.<br><br>CAROLYN COLVIN, Acting Commissioner of Social Security<br><br>                 Defendant. | 1:13-cv-00716-GSA<br><br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**I.     INTRODUCTION**

Alice Soto ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 8, 10).

## II. BACKGROUND AND PRIOR PROCEEDINGS[2]

On October 20, 2009, Plaintiff filed an application for supplemental security income under Title XVI. AR 136-143. The application was denied initially on May 18, 2010, and upon reconsideration on November 10, 2010. AR 93-96, 99-103. Plaintiff filed a request for a hearing on December 17, 2010. AR 105. The hearing was conducted before Administrative Law Judge Robert Lowenstein (the "ALJ") on December 1, 2011. AR 13. On December 21, 2011, the ALJ issued an unfavorable decision determining that Plaintiff was not disabled. AR 13-22. Plaintiff filed an appeal of this decision with the Appeals Council. AR 7. On March 13, 2013, the Appeals Council denied the appeal, rendering the order the final decision of the Commissioner. AR 2-5. This appeal followed.

### A. Plaintiff's Background and Testimony

Plaintiff was born on January 7, 1967, and was 42 years old on the date the application was filed. AR 32, 168. She graduated high school and received vocational training in office skills in 1988. AR 41. After completing her training, Plaintiff worked in data entry for a data processing and accounting service in June and July 1988. AR 188. She began doing assembly work at a technology warehouse from June 1989 through January 1990. AR 188. After working in the assembly field, she worked as a receptionist at a dental office from 1990 through 1994. AR 43, 188. Subsequently, from 1995 through 1998, she worked in shipping and receiving at a car dealership. AR 43, 188. She has not worked since that time. AR 43.

Plaintiff suffers from low back and neck pain, carpal tunnel syndrome, migraine headaches, anxiety, and depression. AR 31. She sees Dr. White for her anxiety and depression and for medications. AR 36, 48. She sees Dr. Vannick for her back and carpal tunnel, and Dr. Liu for epidurals. AR 36. Plaintiff testified that her back pain and the sciatica are her worse problems. These conditions result in continuous sharp, stabbing spasms that are exacerbated by standing. AR 37. Plaintiff's medication helps to ease the pain, but this treatment does not relieve the pain completely. AR 38.

Plaintiff lives with her boyfriend and her eight year old daughter. Her twenty-seven year

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

old son also stays with her occasionally. AR 33. Plaintiff has a driver's license with no restrictions, and she drives two miles to transport her daughter to and from school. AR 34. Plaintiff's parents drove her to the hearing which was an hour and a half drive. AR 34. She visits with her parents once or twice a month. AR 35.

When asked about her daily activities, Plaintiff stated that she takes her medication; takes a shower; goes outside and sits for short periods; makes herself something simple to eat; watches movies; walks to the mailbox that is not too far from her house; picks up her daughter from school; helps her daughter do her homework; makes something simple to eat; and watches television. AR 40. Plaintiff is able to take a shower; make her own bed; and cook once or twice a week. AR 38-39. She makes food that is fast and easy, such as frozen foods and sandwiches, but she is only able to do the dishes for five minutes. AR 37, 39, 182.

Sometimes, Plaintiff's daughter helps her get dressed by putting on her socks, putting on her shoes, and helping her pull up her pants. AR 38. It is difficult for Plaintiff to do laundry because it is hard for her to bend over to put the clothes in the dryer. AR 39. She tries to do housework once a week at a pace that she can tolerate, but sweeping, vacuuming, and mopping aggravate the pain. AR 39-40, 44. Consequently, she does not vacuum, take out the garbage, or do yard work. AR 39-40. Plaintiff goes food shopping twice a month for a half hour, or her boyfriend does the food shopping. AR 183. She watches television, and talks on the telephone with her aunt and parents daily. AR 184.

To manage her medical conditions, Plaintiff's doctor told her to walk around every five minutes at home so that her joints do not get stiff. AR 44. She lies down for one hour three times a day, uses a heating pad, and ices her back. AR 44-46. Plaintiff estimated that she could stand, sit, and walk for a half hour in an eight-hour day. AR 45. She reported that she uses a cane, brace/splint, walker, and glasses. AR 186.

With regard to her cognitive abilities, Plaintiff indicated that her concentration and ability to understand and follow directions is not too good. AR 185. She stated that spoken directions would have to be written down and someone would have to guide her. AR 185.

/ / /

### B. Medical Record

The entire medical record was reviewed by the Court. AR 223-331. The relevant sections of the reports are detailed below.[3]

*Treatment History*

Plaintiff went to see Maury K. Harwood, M.D., M.P.H., on August 1, 2005 with complaints of bilateral hand pain and back pain. AR 227. Dr. Harwood noted that Plaintiff appeared to have early carpal tunnel syndrome and gave her hand splints. AR 227. Dr. Harwood recommended epidural steroid injections for her back, and referred her to a pain management specialist. AR 227.

On April 20, 2007, a magnetic resonance imaging (MRI) indicated that Plaintiff had moderate disc protrusion at L4/L5 with associated mild neural foramen narrowing, spinal canal stenosis, and lateral recess narrowing. AR 234. Dr. Harwood reviewed the MRI and examined Plaintiff on April 23, 2007, noting paraspinal muscle spasm and discomfort with palpation in the lower back. AR 225. Plaintiff's motor and sensory exams were normal. AR 225. Dr. Harwood provided a prescription for Medrol Dosepak, a steroid used to prevent inflammation, and recommended epidural steroid injection. AR 225.

On May 10, 2007, Plaintiff consulted with Sherman Nam Tran, M.D., who noted evidence of carpal tunnel syndrome, but that she had close to full range of motion in the cervical spine, and full range of motion of the elbows, shoulders and wrists. AR 236-37.

In July 2007, Plaintiff reported not taking her medication and the treatment note indicated that Plaintiff was "noncompliant." AR 245. On September 13, 2007, Plaintiff was prescribed Vicodin and reported "doing better." AR 242.

In April 2009, Plaintiff complained of back pain and was given medication. AR 320. In May 2009, Plaintiff was advised to diet and exercise. Beginning in September 2009, Plaintiff received a series of tender point injections. AR 315-320. In October 2011, Plaintiff received an epidural injection, and reported that she "did really well" with the shot. AR 329-30. Plaintiff did

---

[3] The administrative record includes Plaintiffs' medical and psychological evaluations. However, only the medical records are summarized because no issues related to the Plaintiff's psychological issues were raised in this appeal.

not return for the other two follow-up visits. AR 329.

*Medical Opinions*

1. <u>Dr. Suzanne White, M.D., treating physician</u>

Dr. Suzanne White, M.D., is Plaintiff's treating physician. AR 301-321, 325-327. On April 30, 2009, Dr. White first saw Plaintiff for reported back pain. AR 320. Dr. White saw Plaintiff approximately twenty times prior to her completing a functional questionnaire for Plaintiff on July 8, 2010. AR 301-306, 314-320. Dr. White opined that Plaintiff could only sit, stand, or walk for one hour in an eight hour work day, and that the rest of the time she would do nothing and lie down. AR 302. She concluded that Plaintiff could only sit for twenty minutes at one time without interruption, and could stand and walk for ten minutes without interruption. She also concluded that Plaintiff could only lift and carry up to twenty pounds occasionally. AR 301.

Dr. White opined Plaintiff was limited to frequent reaching, feeling, pushing and pulling, and could only occasionally handle and finger. AR 303. Dr. White also determined that Plaintiff could only occasionally climb stairs and ramps, occasionally balance, and could never climb ladders or scaffolds, stoop, kneel, crouch, or crawl. AR 304. Dr. White concluded that Plaintiff could only occasionally operate a motor vehicle and be exposed to vibrations, but could never be exposed to unprotected heights, moving mechanical parts, humidity and wetness, dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat. AR 305. Dr. White reported that the limitations she found were first present in 1998. AR 306.

2. <u>Dr. James Nowlan, Jr., M.D., consultative examiner</u>

Dr. James Nowlan, Jr., M.D., performed a consultative internal medicine exam on March 18, 2010. AR 268. Dr. Nowlan reviewed Plaintiff's records including Plaintiff's MRI which showed degenerative disk disease with spinal stenosis at L4-L5 at the same level of foraminal stenosis. AR 268. The MRI report also indicated that the foraminal stensosis was mild. AR 268.

Dr. Nowlan reported that Plaintiff was moving freely at the examination and she was wearing splits on her wrists, which he felt did not have any real value. AR 269. Dr. Nowlan concluded that Plaintiff's motor strength was 5/5 throughout her upper and lower extremities, and that Plaintiff's chest and lungs were clear to auscultation bilaterally. AR 269, 270. Dr. Nowlan

opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; sit without limitations; and stand and walk eight hours in an eight hour day. AR 271. Dr. Nowlan also determined that Plaintiff had no manipulative limitations and no environmental limitations. AR 271.

### 3. Dr. L. Bobba, M.D., and Dr. C. de la Rosa, M.D., reviewing physicians

On April 27, 2010, Dr. L. Bobba completed a physical RFC assessment for Plaintiff. AR 281-285. Dr. Bobba found that Plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk for a total of six hours in an eight-hour workday; sit for a total of six hours in an eight-hour workday; and had no limitations for pushing and pulling. AR 282. Dr. Bobba found that Plaintiff could frequently climb, balance, kneel, and crawl, and could occasionally stoop and crouch. AR 283. However, Plaintiff is limited in handling and fingering. AR 283. Plaintiff had no environmental limitations. AR 284.

On November 2, 2010, Dr. De la Rosa completed a case analysis. AR 322-24. Dr. De la Rosa determined that Dr. White's limitations were not supported by the objective findings in her progress notes, and were partly inconsistent with Dr. Nowlan's assessment which provided more objective findings. AR 323. Dr. De la Rosa opined Plaintiff could perform light work. AR 323.

**C. The ALJ's Decision**

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established

a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 416.920(a). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 416.920 (a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. § 416.913.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments;[4] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work;[5] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 416.920(a)(4).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 13-22. In particular, at step one, he found that Plaintiff had not engaged in substantial gainful activity since October 20, 2009, the date specified in her application. AR 16. At step two, the ALJ found Plaintiff's migraine headaches, neck pain, anxiety, and depression were medically determinable impairments, but they are not severe impairments. AR 16. He did, however, identify lumbar disc disease with stenosis and carpal tunnel syndrome as severe impairments. AR 16. Nonetheless, at step three, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 17.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to lift and/or carry twenty pounds occasionally and ten pounds frequently; she could sit, stand and/or walk six hours in an eight-hour workday; and could frequently handle and finger bilaterally. She was also capable of occasionally stooping and crouching. AR 17-20. Given these limitations, the

---

[4] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 416.920(c).

[5] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. § 416.945. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

ALJ determined that Plaintiff could not perform her past relevant work, however, he found that she could perform other work including a cashier II, fast food worker, and housekeeper cleaner. AR 20-22.

### III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Id. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Id.

### IV. DISCUSSION

#### A. Evaluation of the Medical Evidence

Plaintiff argues that the ALJ improperly rejected treating physician, Dr. White's opinion. (EFC No. 19 at 4-6). Defendant argues that the ALJ properly evaluated the medical evidence because there were inconsistencies between Dr. White's assessment and other physicians' observations. (ECF No. 20 at 13-14). Given these inconsistencies, Defendant contends that the ALJ properly discredited Dr. White's opinion.

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). However, a "treating physician's opinion is not . . . necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d

747, 751 (9th Cir. 1989) ("the ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion").

When the treating doctor's opinion is not contradicted by another doctor, it can be rejected for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may reject it by providing "specific and legitimate reasons" supported by substantial evidence in the record for the rejection. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983).

Here, the ALJ provided specific and legitimate reasons supported by substantial evidence for discounting Dr. White's opinion. Specifically, the ALJ noted that Dr. White's findings were inconsistent with the other medical evidence in the record. For example, the ALJ noted that Dr. White's opinion was entitled to little weight because she found that Plaintiff requires a cane to walk, however, Plaintiff did not use a cane at her consultative examinations. AR 18, 268-279. Moreover, the ALJ rejected Dr. White's opinion that Plaintiff was limited to sitting, standing, and/or walking for one hour in an eight-hour work day, as this finding was not consistent with Dr. Nolwan's findings that Plaintiff demonstrated full motor strength in the extremities and was observed to move "freely" at her consultative examination AR 19, 269-270. Additionally, Dr. White found that Plaintiff could not be exposed to humidity and wetness, dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat. AR 305. However, this opinion was also contradicted by Dr. Nowlan's determination that Plaintiff's chest and lungs were clear to auscultation bilaterally. AR 18, 269.

The inconsistencies between Dr. White's assessment and Dr. Nowlan's opinion are specific and legitimate reasons to discount Dr. White's opinion. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

The Court is not persuaded by Plaintiff's argument that these inconsistencies are

explained by the fact that Plaintiff's condition had worsened by the time Dr. White completed her medical source statement, which occurred after Dr. Nowlan's evaluation. (ECF No. 19 at 6). Dr. Nowlan examined Plaintiff in March 2010, and Dr. White completed her medical source assessment only four months later in July 2010. AR 268-71, 301-06. There is no support in the record for Plaintiff's assertion that her condition worsened between March 2010 and July 2010 that would explain the inconsistencies between Dr. White's opinion and Dr. Nowlan's examination. For example, there is no record that Plaintiff received additional treatment in April or May 2010. Moreover, in July 2010, Plaintiff received the same "medication and tender point injection" treatment that she had received in September 2009 and January 2010. AR 314, 315, 319. Finally, Dr. White noted that Plaintiff's limitations were first present in 1998, but does not mention anything about Plaintiff's limitations worsening in 2010. AR 306. Under these circumstances, the four month interval between Dr. Nowlan and Dr. White's opinions does not raise any questions about the reliability of Dr. Nowlan's opinion and observations, particularly in the absence of any objective evidence suggesting that Plaintiff's condition had changed substantially during that period. Thus, the ALJ properly relied upon Dr. Nowlan's findings and provided specific and legitimate reasons which are supported by substantial evidence for rejecting Dr. White's opinion.

### B. Plaintiff's Credibility

Plaintiff contends the ALJ failed to provide clear and convincing reasons for discrediting her testimony. (ECF No. 19 at 7-16). Defendant argues that the ALJ's credibility assessment is proper. (ECF No. 20 at 16-20).

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires that the ALJ engage in a two-step analysis. See Treichler v. Comm. of Soc. Sec., 775 F. 3d 1090, 1102 (9th Cir. 2014); Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce

10

the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the first test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of his symptoms by offering "clear and convincing reasons" for the adverse credibility finding. Carmickle, 533 F.3d at 1160 (internal citations omitted). The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered include, but are not limited to: (1) the claimant's reputation for truthfulness; (2) inconsistencies in testimony or between testimony and conduct; (3) the claimant's daily activities; (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); Thomas, 278 F.3d at 958-59 (internal citation omitted).

Here, the ALJ discredited Plaintiff's testimony at step two of the credibility analysis, citing specific, clear and convincing reasons for rejecting Plaintiff's testimony regarding the severity of her symptoms including: 1) inconsistencies between the Plaintiff's reported symptoms and the medical record; 2) the ALJ's observations of Plaintiff's behavior at the hearing, and 3) that Plaintiff's daily activities were inconsistent with her subjective complaints. AR 19-20.

At the outset, the medical evidence supports the ALJ's conclusion that Plaintiff's subjective symptom complaints were not entirely credible. AR 19. For example, Plaintiff claimed that she could only lift ten pounds for ten minutes at a time, and that she could only sit or stand for half an hour each in an eight-hour workday. AR 45-46. However, Dr. Nowlan found

that Plaintiff had 5/5 motor strength and muscle bulk in bilateral upper and lower extremities and that her pain response was mild during the examination. AR 19, 270. Accordingly, the ALJ properly found Plaintiff's allegations of total disability not credible given Dr. Nowlan's observations. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects"); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"); Tidwell v. Apfel, 161 F.3d 599, 601-602 (9th Cir. 1998) (finding a mild or minor medical condition with all other tests reporting normal provides a basis for rejecting claimant's testimony of severity of symptoms); See also, Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies between the record and medical evidence supports a rejection of a claimant's credibility).

Second, the ALJ properly noted that Plaintiff's statements in her function report were contradicted by her behavior at the hearing. In her December 19, 2009 function report, Plaintiff claimed that her concentration and ability to understand and follow directions is not too good and that she cannot pay attention for too long. AR 20, 185. However, the ALJ noted that Plaintiff "paid attention and responded appropriately during the entire duration of the hearing (about 45 minutes)." AR 20. An ALJ is permitted to use personal observation when assessing credibility. See SSR 96-7p ("[i]n instances in which the adjudicator has observed the individual, the adjudicator … should consider any personal observations in the overall evaluation of the credibility of the individual's statements"); Tonapetyan, 242 F.3d at 1148 (ALJ's credibility determination may be based, in part, on his personal observations); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) ("The inclusion of the ALJ's personal observations does not render the decision improper," so long as they are supported) (internal citations omitted).

Lastly, the ALJ properly found that Plaintiff's daily activities were inconsistent with the alleged severity of her symptoms. For example, the ALJ noted that Plaintiff watches television

and talks on the telephone daily, goes shopping, and does light housecleaning. AR 20, 184. He also found that Plaintiff dresses herself, feeds herself, bathes herself, prepares her own meals, takes her daughter to and from school, and helps her daughter with her homework. AR 20, 34, 40, 183-84. A plaintiff's daily activities can be considered as part of an ALJ's credibility analysis. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). In particular, an ALJ may consider inconsistencies between a claimant's activities and her subjective complaints. See Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (ALJ properly determined that the claimant's daily activities "did not suggest [the claimant] could return to his old job at Cummins, but . . . did suggest that [the claimant's] later claims about the severity of his limitations were exaggerated"); Molina, 674 F.3d at 1112 (the ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms") (internal citation omitted).

The Court notes that Plaintiff testified that her daughter sometimes helps her get dressed and that it is difficult for her to do laundry because it is hard for her to bend over to put the clothes in the dryer. AR 38, 40. Plaintiff also testified that she tries to do housework once a week at a pace that she can tolerate, but sweeping, vacuuming, and mopping aggravate the pain. AR 39-40, 44. This is somewhat inconsistent with the ALJ's conclusion that Plaintiff reported doing light housework. AR 20. However, even assuming the ALJ erred with regard to Plaintiff's ability to do light housework, that error is harmless where the other reasons the ALJ offers are proper and are supported by substantial evidence. See Carmickle, 533 F.3d at 1162 (citing Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) ["So long as there remains "substantial evidence supporting the ALJ's conclusions on . . . . credibility" and the error "does not negate the validity of the ALJ's ultimate [credibility] conclusion," such is deemed harmless and does not warrant reversal"]).

Given the above, the ALJ provided several clear and convincing reasons that are supported by substantial evidence to conclude Plaintiff's subjective symptom testimony was not credible. Here, the ALJ clearly identified what testimony he found not credible and what evidence undermined Plaintiff's complaints. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). If

the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." Thomas, 278 F.3d at 959 (internal citation omitted). Accordingly, the ALJ's credibility findings are free of legal error.

## V. CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence as described above.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Alice Soto. The Clerk of the Court is directed to close this action.

IT IS SO ORDERED.

  Dated:   **August 4, 2015**               **/s/ Gary S. Austin**
                                         UNITED STATES MAGISTRATE JUDGE